**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**SUMAN GUPTA, ET AL.**                                    **CIVIL ACTION**


**VERSUS**                                                      **NO: 12–1787**


**MERRILL LYNCH, ET AL.**                              **SECTION "H"(5)**


<u>**ORDER AND REASONS**</u>

Before the Court are the following motions: (1) Motion to Compel Arbitration (R. Doc. 127) filed by Defendants Merrill Lynch, Pierce, Fenner and Smith, Inc., and Merrill Lynch & Co., Inc.;  (2) Motion to Dismiss (R. Doc. 128) filed by Defendant Anil Chaturvedi; and (3) Motion for Review of the Magistrate Judge's Decision (R. Doc. 165) filed by Plaintiffs.  For the following reasons, the Motion to Compel Arbitration is GRANTED IN PART.  Plaintiffs Narinder Gupta and Suman Gupta shall ARBITRATE their claims against Merrill Lynch, Pierce, Fenner and Smith, Inc., and Anil Chaturvedi.  The remaining claims are hereby STAYED pending arbitration.  This matter is ADMINISTRATIVELY CLOSED but may be restored to the trial docket upon motion of a party once

1

arbitration has concluded.  The Motion to Dismiss and the Motion for Review are DENIED WITHOUT

PREJUDICE to be re-urged, if necessary, at a later date.


### BACKGROUND[1]

This case arises from the alleged mismanagement of a trust (the "Trust").  The Plaintiffs are

Narinder Gupta ("N. Gupta"), Suman Gupta ("S. Gupta"), and their two sons, Neel Gupta and Jagan

Gupta (collectively the "Gupta Sons").  The Defendants are Merrill Lynch, Pierce, Fenner and Smith,

Inc. ("MLPFS"), Merrill Lynch & Co., Inc. ("ML & Co.") (collectively "Merrill Lynch"),[2] Merrill Lynch

Bank and Trust company (Cayman) Limited, Merrill Lynch Cayman Holdings Incorporated,  Merrill

Lynch International Holdings, Inc., and Anil Chaturvedi ("Chaturvedi").

Beginning in 1990, N. Gupta met with Chaturvedi—a security broker employer employed

by Merrill Lynch—to discuss wealth management strategies that would ultimately benefit the

Gupta Sons.  Chaturvedi recommended creating a revocable trust, which could be terminated and

liquidated at any time.  Pushpa Bajaj ("Bajaj")—N. Gupta's aunt—settled the Trust on April 10,

2001. The ultimate beneficiaries are S. Gupta and the Gupta Sons; N. Gupta is the secondary

beneficiary.  Merrill Lynch (through Chaturvedi) managed the funds of the Trust at all times.

---

[1] The following facts are drawn primarily from the first amended complaint in this matter.

[2] The complaint groups MLPFS and ML & Co. together as one entity.  For purposes of this Order, so
too does the Court.

On or about May 23, 2002, N. Gupta informed Chaturvedi that Bajaj had passed away. Chaturvedi subsequently obtained a copy of Bajaj's death certificate and changed the date of death. After altering the death certificate, Chaturvedi forged Bajaj's signature on a document that purported to instruct Chaturvedi to transfer $300,000 from the Trust to another Merrill Lynch account. Chaturvedi forged a similar document on September 18, 2003.

On or about February 28, 2007, N. Gupta instructed Chaturvedi to liquidate the Trust. Chaturvedi disregarded this instruction.  N. Gupta and S. Gupta made a similar request of Chaturvedi in 2009.  Despite his previous representations to the contrary, Chaturvedi advised the Trust could not be liquidated.

Plaintiffs eventually filed suit.  Although far from pellucid, the first amended complaint appears to assert causes of action against all Defendants for violations of (1) the Investment Company Act ("ICA"), 15 U.S.C. § 80a *et seq.*, (2) the Security and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a *et seq.*, and (3) the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.*  Plaintiffs have voluntarily dismissed all Defendants except MLPFS, ML & Co., and Chaturvedi.

3

## LEGAL STANDARD

Defendants move to compel arbitration and dismiss this action for improper venue.[3]  The Fifth Circuit has repeatedly declined to address the proper procedural vehicle for bringing such motions.[4]  Because the Fifth Circuit has accepted Rule 12(b)(3) as a proper method for dismissal based on an arbitration clause,[5] the Court analyzes Plaintiffs' motion under Rule 12(b)(3).[6]

On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff.[7]  In deciding such motions, the Court may examine all evidence in the record.[8]

When venue is challenged, district courts in the Fifth Circuit have been inconsistent in allocating the burden of proof.[9]  Most courts in this District, however, hold that a plaintiff bears the burden of proof.[10]  This Court follows their lead and holds that Plaintiffs bear the burden of

---

[3] Chaturvedi has incorporated by reference MLPFS and ML & Co.'s motion to compel arbitration.

[4] *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010) (collecting cases).

[5] *See, e.g.*, *id.*; *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005).

[6] *See Sinners & Saints, LLC v. Noire Blanc Films, LLC*, 937 F. Supp. 2d 835 (E.D. La. 2013) (assessing motion to dismiss based on arbitration clause under Rule 12(b)(3) where parties moved to dismiss under Rule 12(b)(1) or Rule 12(b)(3)).

[7] *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007); *Ross v. Digioia, Jr.*, No. 11–1827, 2012 WL 72703, at *2 (E.D. La. Jan. 10, 2012).

[8] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

[9] *See Uviado, LLC v. United States*, 755 F. Supp. 2d 767, 779 n.7 (S.D. Tex. 2010) (acknowledging split in authority); *Ross*, 2012 WL 72703, at *2 n.4 (same).

[10] *See, e.g.*, *Summer v. Kenton, OH Policea*, No. 11–3162, 2012 WL 1565363, at *4 (E.D. La. May 2, 2012); *Vaughn Med. Equip. Repair Serv. LLC v Jordan Reses Supply Co.*, No. 10–00124, 2010 WL 3488244, at *4 (E.D. La. Aug. 26, 2010); *Ross*, 2012 WL 72703, at *2.

establishing proper venue.[11]

## LAW AND ANALYSIS

The primary issue before the Court is whether Plaintiffs' claims are subject to arbitration. The inquiry is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, which broadly applies to any written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction."[12] Section 2 of the FAA reflects a "liberal federal policy favoring arbitration agreements."[13] To implement this policy, the FAA empowers federal district courts to compel arbitration when a party has refused to comply with an arbitration agreement.[14]

A two-step analysis governs whether parties should be compelled to arbitrate a dispute.[15] The Court must first determine whether the parties agreed to arbitrate the dispute.[16] This determination involves two separate inquiries: (1) whether there is a valid agreement to arbitrate between the parties, and, if so, (2) whether the dispute in question falls within the scope of that

---

[11] *See* 14D Wright, Miller, & Cooper, *Federal Practice and Procedure*, § 3826 (3d ed. 2013) ("The position that probably represents the weight of judicial authority, is that, when an objection has been raised, the burden is on the plaintiff to establish that the district he or she has chosen is a proper venue.").

[12] 9 U.S.C. § 2.

[13] *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[14] *See* 9 U.S.C. § 4; *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

[15] *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007).

[16] *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

agreement.[17]  Although both inquires are generally guided by ordinary principles of state contract law,[18]  the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate.[19]  If the Court finds the parties agreed to arbitrate, it must then proceed to the second step of the analysis and consider whether any federal statute or policy renders the claims non-arbitratable.[20]

I.      <u>Whether Plaintiffs Should be Compelled to Arbitrate</u>

Defendants move to compel arbitration on the basis of four separate arbitration agreements.  Specifically, Defendants invoke a Cash Management Account Agreement (the "CMA"), an Option Agreement, a Custodial Agreement, and an IRA Account Agreement (the "IRA Agreement").  The Court addresses each agreement separately.

A.  *CMA*

The Trust entered into the CMA with MLPFS on April 24, 2001.  Fiduciary Services, Ltd signed the CMA on behalf of the Trust.  The CMA contains an arbitration provision.[21]  The question

---

[17] *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008).

[18] *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

[19] *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).  This follows from the fact that "the FAA is 'at bottom a policy guaranteeing the enforcement of private contractual arrangements.'" *Waffle House*, 534 U.S. at 294 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985)).  Accordingly, a court "look[s] first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement."  *Waffle House*, 534 U.S. at 294.

[20] *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).

[21] The arbitration clause provides in relevant part as follows: "The parties are waiving their right to seek remedies in court, including the right to jury trial . . . . I agree that all controversies which may arise between us, including but not limited to those involving any transactions or the construction, performance,

presented is whether MLPFS, as a signatory to the CMA,[22] can compel to arbitration the beneficiaries of the Trust, who did not sign the agreement.  For the reasons explained more fully below, the Court answers this question in the negative.

Before addressing the merits, the Court must first determine whether federal law or state law governs the circumstances in which a non-signatory can be compelled to arbitration.[23]  The Fifth Circuit precedent is inconsistent.[24]

When confronted by inconsistent precedent, the Fifth Circuit applies the rule of orderliness.[25]  Under this rule, the earliest panel decision controls, "absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court or by our en banc court."[26]

---

or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration."  R. Doc. 127-2 at § 8.

[22] Although the signature of MLPFS does not appear on the face of the CMA, the Court assumes that MLPFS—as the servicer of the CMA or has the power to invoke it.

[23] *Compare Kaplan*, 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."), *with Moses*, 460 U.S. at 24 ("The effect of [§ 2 of the FAA] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."); *see also Int'l Paper Co v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000) (acknowledging tension between *Kaplan* and *Moses*).

[24] *Compare Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347 (5th Cir. 2003) (applying federal law), *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260 (5th Cir. 2004) (same), *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514 (5th Cir. 2006) (same), *and Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469 (5th Cir. 2010) (same), *with Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069 (5th Cir. 2002) (applying Texas law), *Covington v. Aban Offshore Ltd.*, 650 F.3d 556 (5th Cir. 2011) (same), *and Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249 (5th Cir. 2014) (applying Arizona law).

[25] *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 663 (5th Cir. 2012).

[26] *See Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012).

*Fleetwood* is the first panel to consider whether a non-signatory can be bound to arbitrate. *Fleetwood* applied state law. Thus, one could argue that *Fleetwood* requires courts in the Fifth Circuit to apply state law. As explained below, this argument fails to persuade.

As a preliminary matter, *Fleetwood* did not even acknowledge, much less address in depth, whether state law or federal law should apply. Instead, after noting that "ordinary contract principles determine who is bound [by an arbitration agreement]," the court elected to apply Texas law without any further analysis.[27] Moreover, the Fifth Circuit has recognized that the circumstances in which a non-signatory is bound to arbitrate are the same under both federal law and Texas law.[28] Thus, *Fleetwood* had no occasion to address the issue before the Court today. Accordingly, that the *Fleetwood* Court applied Texas law does not necessarily foreclose the application of federal law in this case.[29]

*Bailey* was the first panel to acknowledge the inconsistency in Fifth Circuit law and definitively pronounce on the issue. The court noted "that because the determination of whether a non-signatory is bound by an arbitration provision 'presents no state law question of contract formation or validity,' a court should 'look to the federal substantive law of arbitrability to resolve

---

[27] *See Fleetwood*, 280 F.3d at 1074.

[28] *See Aban Offshore*, 650 F.3d at 558–59.

[29] The *Bailey* Court seemed to recognize *Fleetwood*'s lack of precedential value on this issue by acknowledging that *Fleetwood* applied state law but nonetheless electing to apply federal law. *See Bailey*, 364 F.3d at 267 n.6.

this question.'"[30]  *Bailey* further noted that its decision to apply federal law is consistent with that

of "all federal circuit courts" to address the issue.[31]  Accordingly, the Court finds that *Bailey* is

controlling and therefore applies federal law to determine whether Plaintiffs are bound by the

CMA.[32]

      The Fifth Circuit recognizes six theories for binding a non-signatory to an arbitration

agreement: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) estoppel;

and (6) third-party beneficiary.[33]  In applying these theories, the Court is mindful of the precept

that "arbitration is a matter of consent, not coercion,"[34]  and that therefore "the strong federal

policy favoring arbitration does not apply to the initial determination of whether there is a valid

---

[30] *Bailey*, 364 F.3d at 267 n.6 (quoting *Int'l Paper Co.*, 206 F.3d at 417 n.4).

[31] *Bailey*, 364 F.3d at 267 n.6*.*

[32] In the alternative, even if state law technically controls the issue, the Court could still apply federal law.  In this diversity case, the Court applies the substantive law of the forum state, including its conflict-of-law rules.  *Hyde v. Hoffmann–La Roche, Inc.*, 511 F.3d 506, 510 (5th Cir. 2007).  The CMA explicitly provides for the application of New York law.  Louisiana courts will not invalidate a contractual choice-of-law provision unless there is legal authority to the contrary or the chosen law is *contra bonos mores*. *See Barnett v. Am. Const. Hoist, Inc.*, 91 So. 3d 345, 349 (La. Ct. App. 1st Cir. 2012).  Having discovered no such impediments, the Court interprets the CMA under New York law.

    Federal law and New York law are substantially similar as to when a non-signatory can be compelled to arbitration.  *Compare Bridas*, 345 F.3d at 356, *with Gov't Emps. Ins. Co. v. Grand Med Supply*, No. 11 Civ. 5339(BMC), 2012 WL 2577577, at *3 (E.D. N.Y. July 4, 2012), *Pers. Commc'ns Devices , LLC v. HTC Am., Inc.*, 970 N.Y.S. 2d 370, 376 (Sup. Ct. Suffolk Cnty. 2013), *and Belzberg v. Verus Inv. Holdings Inc.*, 21 N.Y. 3d 626, 630–31 (N.Y. 2013).  "Where there are no differences between the relevant substantive laws ..., there is no conflict, and a court need not undertake a choice of law analysis."  *Aban Offshore*, 650 F.3d at 559 (alterations in original) (quoting *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005)).  Accordingly, the Court is free to apply federal law or New York law.

[33] *Bridas*, 345 F.3d at 356.

[34] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (internal quotation marks omitted).

agreement to arbitrate."[35]   Thus, it is no surprise that arbitration agreements will apply to nonsignatories "only in rare circumstances."[36]

i. *Incorporation by Reference*

A non-signatory may be compelled to arbitration when that party enters into a contractual relationship which incorporates an arbitration provision from a separate contract.[37]  There is no evidence in the record that Plaintiffs have entered into any contracts which incorporate the CMA. Accordingly, this theory is inapplicable.

ii. *Assumption*

A party may be bound by an arbitration agreement "if its subsequent conduct indicates that it is assuming the obligation to arbitrate."[38]  Plaintiffs never manifested through their conduct any willingness to arbitrate.  In fact, Plaintiffs have explicitly disavowed the obligation to arbitrate. Accordingly, it cannot be said that Plaintiffs assumed the obligation to arbitrate.

iii. *Agency*

A non-signatory may be bound to arbitrate if another party signed the agreement as an agent of the non-signatory.[39]  Modified to fit the contours of this case, Plaintiffs may be compelled

---

[35] *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013).

[36] *Hellenic*, 464 F.3d at 517.

[37] *See Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995).

[38] *Id.* at 777.

[39] *See Bridas*, 345 F.3d at 357.

to arbitrate if the Trust signed the CMA as agent for Plaintiffs.

The law is clear that a trustee is not *ipso facto* an agent for the beneficiaries of the trust.[40] It follows that "the beneficiary of a trust 'is not personally liable upon contracts made by the trustee in the course of the administration of the trust.'"[41]  A beneficiary only incurs personal liability when the trustee also acts as his agent.[42]  Defendants have presented no evidence of an agency relationship between Plaintiffs and the trustee.  Accordingly, Plaintiffs cannot be compelled to arbitrate under an agency theory.[43]

### iv. *Veil-Piercing/Alter Ego*

Under the alter ego doctrine, a parent corporation may be bound by an agreement entered into by its subsidiary if the two corporations are so closely related that "their conduct demonstrates a virtual abandonment of separateness."[44]  Neither the individual Plaintiffs nor the

---

[40] *See* Restatement (Second) of Trusts § 8 (1959).  Both the Supreme Court and the Fifth Circuit have recognized the Restatement (Second) of Trusts as an accurate reflection of the common law of trusts.  *See Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 252 (2000); *Borst v. Chevron Corp.*, 36 F.3d 1308, 1315–16 (5th Cir. 1994).

[41] *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 n.7 (9th Cir. 2006) (quoting Restatement (Second) of Trusts § 275).

[42] *See Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir. 1985).

[43] Defendants rely heavily on a 20-year-old decision from the District of New Jersey.  *See generally Bevere v. Oppenheimer & Co.*, 862 F. Supp. 1243 (D. N.J. 1994).  *Bevere* is not controlling for two reasons. First, *Bevere* involved the actions of an ERISA plan administrator purportedly taken on behalf of the plan. *See id.* at 1245–46.  Thus, *Bevere* is factually distinguishable.  Second, the legal reasoning in *Bevere* relied heavily on the law of agency.  *See id.* at 1247–49.  As explained *supra*, the law of agency is distinct from the law of trusts.

[44] *Bridas*, 345 F.3d at 358–59.

Trust is a corporation.  Thus, the alter ego theory is clearly inapplicable  to this case.

      v.  *Estoppel*

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases."[45] The Fifth Circuit recognizes two versions of estoppel in the arbitration context.   The first version applies when a non-signatory seeks to compel arbitration against a signatory.[46]   The inverse scenario—often called "direct-benefit estoppel"—addresses the circumstances in which a signatory can compel a non-signatory to arbitration.[47]  It is the latter version of equitable estoppel that applies in this case.

Direct-benefit estoppel "involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract."[48]  A non-signatory can "embrace" a contract containing an arbitration agreement by (1) "knowingly seeking and obtaining 'direct benefits' from that contract," or (2) "seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract."[49]

The first method of embracing a contract is clearly not present.  N. Gupta and S. Gupta have

---

[45] *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984).

[46] *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000).

[47] *Crawford*, 748 F.3d at 259 n.5.

[48] *Hellenic*, 464 F.3d at 517–18 (alteration in original).

[49] *Noble Drilling*, 620 F.3d at 473.

submitted affidavits disclaiming any knowledge of or consent to the terms of the CMA. Defendants have failed to identify any evidence to the contrary. Because no evidence supports a conclusion that Plaintiffs knew of the terms of the CMA, they could not have had the knowledge necessary to have "knowingly exploited" it.[50]   Moreover, Plaintiffs alleged in the complaint that the Trust remains unliquidated. Accepting this allegation as true, Plaintiffs—as beneficiaries—have not obtained any direct benefits from the CMA.[51]

Nor do the circumstances support the second version of direct-benefit estoppel. Plaintiffs certainly did not sue to enforce the terms of the CMA, so the question presented is whether their claims "can *only* be determined by reference" to the CMA.[52] Plaintiffs assert claims for violations of (1) the ICA, (2) the Exchange Act, and (3) RICO. The facts allegedly supporting these claims stem from the actions or inaction of Chaturvedi. Thus, the CMA will be largely irrelevant to establishing liability.[53] Because Plaintiffs are not "required" to base their claims on the CMA, the second version of direct-benefits estoppel is not applicable.[54] Given the foregoing, Plaintiffs are not estopped from raising their status as non-signatories to avoid arbitration.

---

[50] *See id.* at 473–74.

[51] As explained *supra*, the Court accepts all well-pleaded allegations as true on a Rule 12(b)(3) motion to dismiss for improper venue. Moreover, Defendants have not submitted evidence to demonstrate that Plaintiffs have received any direct benefits from the CMA.

[52] *See Noble Drilling*, 620 F.3d at 474 (emphasis added).

[53] Indeed, some of the alleged misconduct occurred prior to the confection of the CMA.

[54] *See Noble Drilling*, 620 F.3d at 474–75.

vi.  *Third-Party Beneficiary*

Whereas direct-benefit estoppel looks to the parties' conduct after the contract was executed, the third-party beneficiary doctrine requires the Court to examine the intentions of the parties at the time the contract was executed.[55]  The dispositive inquiry is whether "the intent to make someone a third-party beneficiary is clearly written or evidenced in the contract."[56]

The CMA does not evince the requisite clear intent to benefit Plaintiffs.  Indeed, the CMA does not even mention Plaintiffs by name, much less suggest that Plaintiffs are intended beneficiaries.  This omission is significant.  The Fifth Circuit is more likely to compel arbitration when the non-signatory is expressly referenced in the contract.[57]  At most, Plaintiffs merely benefit from the existence of the CMA.  But this is not enough to overcome the presumption that parties are contracting for themselves only.[58]

Additionally, as a general rule, the Fifth Circuit will not compel arbitration under a third-party beneficiary theory unless the non-signatory is suing to enforce the contract.[59]  That Plaintiffs

---

[55] *Bridas*, 345 F.3d at 362.

[56] *See id.* (internal quotation marks omitted).

[57] *Compare Conegie*, 492 F.3d at 600 (compelling arbitration where agreement with nursing home expressly named non-signatory as the person receiving care), *with Bridas*, 345 F.3d at 362–63 (declining to compel arbitration where integration clause provided that contract only applied to certain defined parties). The CMA expressly provides that the only parties thereto are MLPFS and the Trust.

[58] *See Bridas*, 345 F.3d at 362.

[59] *See Bridas*, 345 F.3d at 363 ("We are . . .  reluctant to bind the [non-signatory] . . . on a third-party beneficiary theory because the [non-signatory] has never filed a claim against [the signatory] premised upon the agreement, or otherwise sought to enforce its terms."); *Wood v. Penntex Res., L.P.*, 458 F. Supp. 2d 355, 373 n.3 (S.D. Tex. 2006) ("In *Bridas*, the court made it clear that third-party beneficiary estoppel could not

14

are not suing to enforce the CMA militates strongly against compelling arbitration under a third-party beneficiary theory.

B. *Option Agreement*

Both N. Gupta and S. Gupta signed an Option Agreement with MLPFS related to a joint account.  The following language appears directly above their signatures:

> "I have read, understood, and agree to the terms and conditions stated on the reverse side of this Form.  By signing this agreement, I acknowledge (1) in accordance with paragraph 9 on the reverse side of this form, that I am agreeing in advance to arbitrate any controversies which may arise with you, [sic] (2) that I have received a copy of this Agreement.[60]

Paragraph 9 provides in pertinent part as follows in bold, capital letters:

> The parties are waiving their right to seek remedies in court . . . . I agree that all controversies that may arise between me and [MPLFS], including, but not limited to, those involving any transaction or the construction, performance, or breach of this or any other agreement between me & [MLPFS], whether entered into prior to, on, or subsequent to the date hereof, shall be determined by arbitration.[61]

The Option Agreement defines "me" as any signatory to the agreement, *i.e.*, N. Gupta and S. Gupta.[62]

In deciding whether to compel arbitration under this agreement, the preliminary question

---

serve as a basis to compel a nonparty to arbitrate if the nonparty had not sued on the contract."); *accord Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 200 (S.D. Tex. 2008).

[60] R. Doc. 127-5.

[61] *Id*.

[62] *Id.*

15

is whether the parties have to agreed to arbitrate.[63]  This question bifurcates into separate, albeit

interrelated, inquiries: (1) whether there is a valid agreement to arbitrate between the parties,

and, if so, (2) whether the dispute in question falls within the scope of that agreement.[64]  New York

law governs both inquiries.[65]

Under New York law, arbitration agreements are contracts, and, as such, are subject to the

accepted rules of contractual interpretation.[66]  New York's highest court has indicated, however,

"that a higher threshold of proof of contract formation applies to arbitration agreements than to

other types of contracts."[67]  A court will not compel arbitration absent "clear, explicit, and

unequivocal" evidence that the parties agreed to arbitrate.[68]

A party who signs a contract is conclusively presumed to assent to its terms, absent fraud

or some other wrongful act by the other contracting party.[69]  N. Gupta and S. Gupta signed the

Option Agreement, which contains a clear and unequivocal arbitration agreement.[70]  Given that

---

[63] *Conegie*, 492 F.3d at 598.

[64] *Sherer*, 548 F.3d at 381.

[65] *See First Options*, 514 U.S. at 944; *see also supra* note 7. Like the CMA, the IRA Agreement explicitly provides for the application of New York law.

[66] *Salvano v. Merrill Lynch, Pierce, Fenner & Smith*, 647 N.E. 2d 1298, 1302 (N.Y. 1995).

[67] Vincent Alexander, *McKinney's Consolidated Laws of New York Annotated*, § 7501.

[68] *Fiveco, Inc. v. Haber*, 893 N.E. 2d 807, 809 (N.Y. 2008).

[69] *Level Exp. Corp. v. Wolz, Aiken & Co.*, 111 N.E. 2d 218, 221 (N.Y. 1953).

[70] That the arbitration provision was arguably not contained in the original signed document but was instead incorporated by reference is of no moment.  *See Aerotech World Trade Ltd. v. Excalibur Sys., Inc.*, 654 N.Y.S. 2d 386, 387 (N.Y. App. Div. 1997) ("[A]n agreement to arbitrate can be incorporated by reference.").

Plaintiffs have not presented any evidence of misconduct on the part of MLPFS with respect to the Option Agreement, the Court finds that N. Gupta and S. Gupta agreed to arbitrate with MLPFS.

The next question is whether the claims asserted by N. Gupta and S. Gupta fall within the scope of their arbitration agreement.  The Option Agreement contains a very broad arbitration agreement in which N. Gupta and S. Gupta agree to arbitrate any controversy with MPLFS, whether that controversy arises from the Option Agreement itself or any other agreement or transaction with MLPFS.  Broad arbitration clauses like this one are valid under New York law and must be given full effect in order to effectuate the intent of the parties.[71]  Any limitation  on the scope of a broad arbitration clause must be specifically enumerated in the agreement itself.[72]  There are no such limitations in the Option Agreement.  Furthermore, any ambiguity in the scope of the arbitration provision must be resolved in favor of arbitration.[73]  This rule operates with particular force when the arbitration clause is broad.[74]  Given the foregoing, the Court finds that the arbitration provision in the Option Agreement is sufficiently broad to cover the claims asserted by N. Gupta and S. Gupta against MLPFS.

---

[71] *See In re Meisels*, 593 N.E. 2d 1359, 1364 (N.Y. 1992) ("[B]road arbitration agreements are permissible."); *In re Weinrott (Carp)*, 32 N.Y. 2d 190, 199 (N.Y. 1973) ("A broad arbitration clause should be given the full effect of its wording in order to implement the intention of the parties.").

[72] *See Silverman v. Benmor Coats, Inc.*, 461 N.E. 2d 1261, 1265–66 (N.Y. 1984).

[73] *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258  (5th Cir. 1996) ("In applying state law . . . 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'") (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989)).

[74] *See Webb*, 89 F.3d at 259.

Having found the parties agreed to arbitrate, the Court next considers whether any federal statute or policy renders the claims non-arbitratable.[75]   The Court is aware of no such impediment to arbitration.   Quite the contrary, the Supreme Court has expressly ruled that claims of the sort asserted by Plaintiffs are subject to arbitration.[76]   Accordingly, the claims of N. Gupta and S. Gupta against MLPFS are subject to arbitration under the clear terms of the Option Agreement.

As a concomitant to the finding that the claims against MLPFS are subject to arbitration, the Court also finds that the claims of N. Gupta and S. Gupta against Chaturvedi are subject to arbitration.   The complaint explicitly alleges that Chaturvedi acted at all times on behalf of Merrill Lynch.[77]   The Fifth Circuit has not yet addressed whether an employee can invoke an arbitration agreement signed by his employer,[78] but other circuits have.   "Case law overwhelmingly holds that an employee is protected by an arbitration agreement signed by his or her employer."[79]   A rule to the contrary would allow plaintiffs to circumvent arbitration agreements merely by naming the

---

[75] *Brown*, 304 F.3d at 471.

[76] *See generally Shearson/American Express, Inc.*, 482 U.S. 220 (1987) (holding that claims under RICO and the Exchange Act are subject to arbitration); *see also Cheshire Place Assocs. v. W. of Eng. Ship Owners Mut. Ins. Ass'n (Lux.)*, 815 F. Supp. 593, 598–99 (E.D. N.Y. 1993) (finding Supreme Court precedent supports arbitrability of ICA claims); *Jureczski v. Bank One Tex., N.A.*, 75 F. App'x 272 (5th Cir. 2003) (affirming order compelling arbitration of ICA claim).

[77] R. Doc. 117 at ¶XXXIII.

[78] *Baum v. Avada Brands, Inc.*, No. Civ.A. 3:00–CV–0700G, 1999 WL 1034757, at *7 (N.D. Tex. Nov. 12, 1999).

[79] *Dunmire v. Hoffman*, No. 05 Civ. 4852(DAB), 2006 WL 2466248, at *4 (S.D. N.Y. Aug. 24, 2006); *see also Baum*, 1999 WL 1034757, at *7 ("[O]ther circuit court decisions establish that an agent is entitled, pursuant to an arbitration agreement between his principal and the plaintiff, to compel arbitration of the plaintiff's claims against the agent for acts taken in his or her representative capacity.").

employee as an individual defendant instead of the employer itself,[80] which would in turn thwart the strong federal policy in favor of arbitration.

C.  *IRA Agreement and Custodial Agreement*

Defendants reference two other arbitration agreements in support of their motion to compel—the IRA Agreement and the Custodial Agreement.  The only signatories to these agreements are N. Gupta and MLPFS.  For the reasons previously explained, N. Gupta's claims against MLPFS (as well as those asserted by S. Gupta) are subject to arbitration under the Option Agreement.  Thus, the pertinent inquiry is whether the IRA Agreement or Custodial Agreement provides any basis for referring the claims of the Gupta Sons to arbitration.  As non-signatories, their claims can only be subject to arbitration under the theories discussed in Subpart A of this Order and Reasons.  Clearly, none of those theories are applicable here.  Accordingly, neither the IRA Agreement nor the Custodial Agreement has any material impact on the motion to compel arbitration.

II.  <u>Whether N. Gupta and S. Gupta's Claims Should be Dismissed or Stayed</u>

In the event the Court submits any claims to arbitration, Defendants move to dismiss those claims for improper venue.  Although the FAA does not support dismissal of a claim *in haec verba*, the Fifth Circuit has held that dismissal is appropriate "when *all* of the issues raised in the district

---

[80] *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993).

19

court must be submitted to arbitration."[81]  There are still claims remaining that are not subject to arbitration, namely, N. Gupta and S. Gupta's claims against ML & Co. and the claims of the Gupta Sons against all Defendants.  Moreover, even assuming *arguendo* that all issues are referable to arbitration, the Fifth Circuit has since clarified that dismissal is not required but is instead a decision entrusted to the sound discretion of the district court.[82]  Given the foregoing, the Court declines to dismiss the claims subject to arbitration.

III.    Whether the Remaining Claims Should Be Stayed

Having referred the claims of N. Gupta and S. Gupta against MLPFS and Chaturvedi to arbitration, the Court must now decide whether to stay the remaining claims pending arbitration. Although Defendants are not entitled to a stay as a matter of law,[83] they may be entitled to a discretionary stay.[84]  Because the Court's discretionary authority is "largely unreviewable, it must not be abused."[85]  Accordingly, in deciding whether to stay proceedings, a Court "must weigh competing interests and maintain an even balance."[86]  Courts may consider such factors as whether

---

[81] *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original).

[82] *See Apache Bohai Corp. v. Texaco China*, 330 F.3d 307, 311 n.9 (5th Cir. 2003).

[83] *In re Talbott Big Foot, Inc.*, 887 F.2d 611, 614 (5th Cir. 1989).

[84] *See Moses*, 460 U.S. at 20 n.23 ("In some cases . . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration.  That decision is one left to the district court . . . as a matter of its discretion to control its docket."); *Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 755 (5th Cir. 1993).

[85] *Coastal (Bermuda) LTD. v. E.W. Saybolt & Co., Inc.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985).

[86] *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).

(1) questions of fact common to all parties are likely to be decided in arbitration, (2) allowing the non-arbitrable claims to go forward would involve significant expense and inconvenience, and (3) the non-arbitrating parties would be prejudiced by a stay.[87]

All of these factors weigh in favor of staying the remaining claims pending arbitration.  First, Plaintiffs assert identical causes of actions against each Defendant which share a common nucleus of underlying facts.  Resolving these common issues of law and fact in arbitration eliminates any possibility of conflicting decisions, conserves judicial resources, and is the most efficient way to adjudicate Plaintiffs' claims.  Second, in addition to promoting judicial economy, a stay of all remaining claims is most convenient for all involved in the litigation.  Requiring the parties themselves, their counsel, and the witnesses to participate in parallel proceedings—one in New York, the other in Louisiana—would impose undue hardship.  Third, Plaintiffs have failed to demonstrate any prejudice that would result from a temporary stay.  Finally, if Plaintiffs were forced to adjudicate their remaining claims in this forum, the arbitration proceedings would essentially be rendered meaningless and the federal policy in favor of arbitration thwarted.[88]

---

[87] *See Odell Assocs., Inc. v. Alton Oschner Med. Found.*, No. Civ. 01–694, 2002 WL 10465, at *2–3 (E.D. La. Jan. 2, 2002); *Patnik v. Citicorp Bank Trust FSB*, 412 F. Supp. 2d 753, 762 (N.D. Ohio 2005).

[88] *See Sam Reisfeld & Son Import Co. v. S. A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976); *Harvey v. Joyce*, 199 F.3d 790, 795–96 (5th Cir. 2000).

**CONCLUSION**

Although arbitration is a matter of consent, that consent, when freely given, cannot be unilaterally withdrawn.   N. Gupta and S. Gupta have clearly and unequivocally consented to arbitrate their claims against MLPFS and Chaturvedi.   Accordingly, the FAA requires the Court to compel arbitration and impose a mandatory stay.   Given that the claims subject to arbitration are virtually identical to those that are non-arbitratable, the Court will exercise its discretionary authority and stay all proceedings until the arbitration process has concluded.

New Orleans, Louisiana, this 15th day of August, 2014.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

22